**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Calvin CASSIDY, Defendant–Appellee.**

No. 89–3372.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 14, 1989.
Decided March 30, 1990.

**544**

John M. DiPuccio, David J. Horne (argued), Office of the U.S. Atty., Cincinnati, Ohio, for U.S.

Hugh D. Holbrock, Timothy R. Evans (argued), Holbrock & Jonson, Hamilton, Ohio, for Calvin Cassidy.

Before KRUPANSKY and RYAN, Circuit Judges; and CHURCHILL, Senior District Judge.[*]

CHURCHILL, Senior District Judge.

The government appeals the district court's dismissal of a three-count indictment charging Calvin Cassidy with (1) felon in possession of a firearm in violation of repealed 18 U.S.C.App. § 1202(a)(1), (2) felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and (3) making false statements to a dealer with respect to a fact material to the lawfulness of the sale of a firearm in violation of 18 U.S.C. § 922(a)(6). For the reasons that follow, we reverse.

## I.

On September 29, 1983, Defendant Calvin Cassidy was convicted in the State of Ohio of trafficking in marijuana, a crime punishable by a prison term in excess of one year. Cassidy was released from prison on June 29, 1984 and received a "Restoration to Civil Rights" certificate (the "Restoration Certificate") from the Ohio Adult Parole Authority which restored "the rights and privileges forfeited by [his] conviction; namely the right to serve on juries and to hold office of honor, trust, or profit."

On January 18, 1989, Cassidy was indicted by a federal grand jury in connection with two separate incidents involving possession of a firearm. Count I charged that on or about March 29, 1986, Cassidy, being a person convicted of a "crime punishable by imprisonment for a term exceeding one year,"[1] knowingly possessed, in commerce and affecting commerce, a firearm in violation of 18 U.S.C.App. § 1202(a)(1). Count II charged that on or about January 3, 1987, Cassidy, being a "convicted felon," knowingly received a firearm which had been shipped in interstate commerce in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(1)(B).[2] Count III charged that on or about January 3, 1987, Cassidy knowingly made a false statement to a firearms dealer in connection with the acquisition of a firearm likely to deceive such dealer with respect to the lawfulness of the sale of a firearm in violation of 18 U.S.C. § 922(a)(6) and § 924(a)(1)(B).

During the period between the acts forming the basis for the charge in Count I and the acts supporting the violations alleged in Counts II and III, Congress enacted the

---

\* Honorable James P. Churchill, Chief District Judge for the Eastern District of Michigan, sitting by designation. Judge Churchill became Senior District Judge on December 30, 1989.

1. Hereinafter, the short hand "convicted felon" will be used where appropriate to refer to a person convicted of a "crime punishable by imprisonment for a term exceeding one year."

2. 18 U.S.C. § 922(g)(1) makes it a federal crime for a person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce, any firearm."

Firearm Owners Protection Act.[3] Effective November 15, 1986, FOPA repealed section 1202(a) and amended section 922(g) to include the section 1202(a) possession offense.[4] FOPA also defined the phrase "crime punishable by imprisonment for a term exceeding one year." *See* 18 U.S.C. § 921(a)(20).

■ The district court found that the Restoration Certificate given to Cassidy upon his release from prison constituted a "restoration of civil rights" for purposes of section 921(a)(20). The district court held that since the Restoration Certificate did not expressly limit Cassidy's firearms privileges,[5] Cassidy did not fall within the statutory definition of "convicted felon," thus requiring dismissal of Counts II and III. The district court also held that the new definition of "convicted felon" applied to prosecutions under the repealed section 1202(a)(1), thus requiring dismissal of Count I.

## II.

This appeal presents us with a novel question of statutory interpretation concerning the definition of the term "crime punishable by imprisonment for a term exceeding one year" set forth at 18 U.S.C. § 921(a)(20). "Statutory interpretation is a question of law which this Court reviews *de novo.*" *In re Vause*, 886 F.2d 794, 798 (6th Cir.1989). Our objective when construing a federal statute is to ascertain the intent of Congress. *See id.*

The first step in our inquiry is to analyze the language of the statute. *Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). The pertinent language reads as follows:

> The term "crime punishable by imprisonment for a term exceeding one year" does not include—
>
> (A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or
>
> (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.
>
> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or *has had civil rights restored* shall not be considered a conviction for purposes of this chapter, *unless such* pardon, expungement, or *restoration of civil rights expressly provides that the person may not ship, transport, possess or receive firearms.*

18 U.S.C. § 921(a)(20) (emphasis added).

The mandate of Congress expressed in the second sentence of the definition is plain. We must look to the law of the state in which a defendant was tried in order to determine whether the defendant was convicted of a "crime punishable by imprisonment for a term exceeding one year." Cassidy does not contest the fact that he was convicted in the State of Ohio of a crime punishable by imprisonment for a term exceeding one year under Ohio law, nor does he contend that he falls within one of the

---

3. Pub.L. No. 99–308, 100 Stat. 449 (1986) [hereinafter FOPA].

4. One source of legislative history states that one of the benefits of FOPA is that it "[c]larifies the law by combining in one section all of the offenses related to sale of firearms to unqualified persons, and the offenses of receipt, possession and transport of firearms by unqualified persons." H.R.Rep. No. 99–495, 99th Cong.2d Sess. 2, *reprinted in* 1986 U.S.Code Cong. & Admin.News 1327, 1328.

5. The district court held that since the Restoration Certificate was silent concerning firearms, there was no express limitation on Cassidy's firearms privileges. The district court implicitly held that the state firearms disabilities created by Ohio Rev.Code § 2923.13, which is independent from the statutory provisions pursuant to which Cassidy's civil rights were restored, *see* Ohio Rev.Code §§ 2961.01 and 2967.16, did not constitute an express limitation on Cassidy's firearms rights. In coming to the conclusion that Cassidy is a "convicted felon," we reject the district court's requirement that the express restriction on firearms privileges must be contained in the same statutory provision, or in the certificate, which restores civil rights.

exclusions listed in subparagraphs (A) and (B). Cassidy argues that the Restoration Certificate effected a restoration of his civil rights as contemplated by the third sentence of section 921(a)(20).

The effect of the third sentence of the definition is to exempt a person from federal firearms disabilities, notwithstanding a felony conviction, if such person has "had civil rights restored ... unless such ... restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." *Id.* It was the unmistakable intent of Congress to eliminate the disabling effect of a felony conviction when the state of conviction has made certain determinations, embodied in state law, regarding a released felon's civil rights and firearms privileges.

■ Considering the definition as a whole, it is clear that Congress intended that courts refer to state law to determine whether an individual should be subject to federal firearms disabilities by virtue of a criminal conviction. If state law has restored civil rights to a felon, without expressly limiting the felon's firearms privileges, that felon is not subject to federal firearms disabilities. This is the clear and unambiguous intent of Congress as expressed in section 921(a)(20).

The answers to two questions, however, that arise when we attempt to apply section 921(a)(20) to the facts and state law in this case, are not clear from the face of the definition. First, it is not clear which civil rights must be restored to constitute a "restoration of civil rights." Second, it is unclear whether Congress intended that a court look only to the document, if any, tendered to a felon upon release to determine whether his civil rights have been restored and whether there is an express limitation upon his firearms privileges. It is axiomatic that if we must look to the whole of state law in order to determine whether a felon's civil rights have been restored, as opposed to looking only to an order or certificate, we must also look to the whole of state law in order to determine if his firearms privileges have been expressly restricted.

### III.

#### A.

In order to answer these questions, we must turn to the legislative history of FOPA in general and of section 921(a)(20) in particular. *See Vause,* 886 F.2d at 801. The first version of FOPA was introduced in the fall of 1979.[6] It was introduced in response to perceived deficiencies in existing law concerning firearms[7] and enforcement abuses by the Treasury Department's Bureau of Alcohol, Tobacco and Firearms ("BATF").[8] Congress was also concerned about the emphasis and direction of the BATF's enforcement of the Gun Control Act of 1968.[9] Congress desired to direct

**6.** The bill, entitled the *Federal Firearms Law Reform Act of 1979,* was introduced in the House by Representative Volkmer on September 10, 1979. H.R. 5225, 96th Cong., 2d Sess., 125 Cong.Rec. 23,832 (1979). The bill was introduced in the Senate by Senator McClure on October 5, 1979. S. 1862, 96th Cong., 2d Sess., 125 Cong.Rec. 27,383 (1979) [hereinafter S. 1862].

**7.** The relevant statutory provisions extant at the time included Titles IV and VII of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, 82 Stat. 226 (codified at 18 U.S.C. §§ 921–928, 1201–1203) (as amended by The Gun Control Act of 1968, Pub.L. No. 90–618, 82 Stat. 1214 (codified as 18 U.S.C. §§ 921–929) [hereinafter, as amended, the Gun Control Act] ).

**8.** As one legislator stated "[t]he 1968 act has, however, created numerous administrative and enforcement problems because of poor draftsmanship. As outlined in testimony before the Senate Judiciary Committee, the enforcement of the act's restrictions has resulted in infringements of basic individual liberties, such as abusive search and seizure practices and unwarranted prosecutions for mere technical violations of the law." 131 Cong.Rec. S9,113 (daily ed. July 9, 1985) (statement of Senator Laxalt). *See generally* Garvey, *The Firearms Owners' Protection Act: A Historical and Legal Perspective,* 17 Cumb.L.Rev. 585, 604–05 (1987).

**9.** This is illustrated by an excerpt from an early report by a subcommittee of the Senate Judiciary Committee concerning hearings it held on federal firearms law:

Based upon these hearings, it is apparent that the enforcement tactics made possible by current firearms laws are constitutionally, legally, and practically reprehensible. Although

the enforcement efforts of the BATF away from what Congress viewed as unintentional and technical violations of the Gun Control Act toward what Congress perceived as more "serious, intentional criminals."[10] One of the perceived problems with existing law was the judicial interpretation of "crime punishable by imprisonment for a term exceeding one year."

In *Dickerson v. New Banner Institute, Inc.*, the Supreme Court held that this phrase should be interpreted with reference to federal, not state, law. 460 U.S. 103, 111–112, 103 S.Ct. 986, 991–992, 74 L.Ed.2d 845 (1983). The Supreme Court, holding that the expunction of a state conviction did not nullify the conviction for purposes of the federal firearms statutes, pointed out the difficulty of enforcing a rule that made firearm disabilities dependent upon state statutes that vary widely from state to state. *Id.* at 120–121, 103 S.Ct. at 995–996. Despite this warning, Congress expressly overruled *Dickerson* by making "convicted felon" status dependent upon state law. *See United States v. Kolter*, 849 F.2d 541, 543 (11th Cir.1988).

In S. 1862, persons were to be subject to firearms disabilities if they had been "convicted in any court of a disabling crime." *See* 125 Cong.Rec. 27,383. The bill defined "disabling crime" as

> a violation of chapters 5, 7, 12, 35, 37, 39, 42, 49, 51, 55, 68, 77, 81, 84, 95, 96, 99, 102, 103, 105, 113, 115, and 117 of title 18, attempts at violations of the aforementioned chapters, or any similar crime punishable in a court, except a State offense classified by the law of a State as a misdemeanor and punishable by a term of imprisonment of two years or less. Any conviction which has been expunged or set aside shall not be considered a

conviction for the purposes of this chapter.

*Id.* In a subsequent version, S. 1030, the sponsors of FOPA abandoned this approach and attempted instead to define "crime punishable by imprisonment for a term exceeding one year." *See* S. 1030, 97th Cong., 1st Sess. (1981).

The first version of S. 1030 defined "convicted felon" as follows:

> The term "crime punishable by imprisonment for a term exceeding one year" shall not include (A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less: *Provided, however,* that what constitutes a conviction shall be determined in accordance with the law of the jurisdiction in which the proceedings were held: *Provided further,* That any conviction which has been expunged or set aside or for which a person has been pardoned or has had his or her civil rights restored shall not be considered a conviction under the provisions of this Act.

*Id.* A subsequent version of S. 1030 added the phrase "unless such pardon, expungement, or restoration of civil rights expressly provided that the person may not ship, transport, possess, or receive firearms" to the end of the definition. S.Rep. No. 97–476, 97th Cong., 2d Sess. 4 (1982).

The reason for this addition was explained in the Senate Judiciary Committee Report accompanying the revised version of S. 1030:

> The original language of S. 1030 provided that a person barred from gun owner-

---

Congress adopted the Gun Control Act with the primary object of limiting access of felons and other high-risk groups to firearms, the overbreadth of the law has led to neglect of precisely this area of enforcement.... The [BATF's] own figures demonstrate that in recent years the percentage of its arrests devoted to felons in possession and persons knowingly selling to them have dropped from 14 percent down to 10 percent of their firearms cases [and that] 55 percent of its gun law

prosecutions overall involve persons with no record of a felony conviction, and that a third involve citizens with no police record whatsoever.

Senate Subcommittee on the Constitution, The Right to Keep and Bear Arms 20–21 (Comm. Print February 1982).

**10.** *See* S.Rep. 97–476, 97th Cong., 2d Sess. 14–17 (1982).

ship by a conviction would be relieved from that bar if he received a pardon or restoration of civil rights. The amended bill adds the exception that this will not apply if the pardon or restoration expressly provides that the recipient may not own firearms. This allows flexibility should such a pardon or restoration be based upon considerations not relating to fitness to own a firearm.

*Id.* at 12. The Judiciary Committee report also explained why the definition of "convicted felon" in existing law needed revision:

S. 1030 works two changes to this subsection. The first is a recognition that what constitutes a conviction shall be determined in accord with the law of the jurisdiction where the underlying proceedings were held. This is intended to accommodate state reforms adopted since 1968, which permit dismissal of charges after a plea and successful completion of a probationary period, or which create 'open-ended' offenses, a conviction for which may be treated as a misdemeanor or felony at the option of the court. Since the federal prohibition is keyed to the state's conviction, state law should govern in these matters. In the case of 'open-ended' offenses which are classed as felonies but may be reduced by the trial court, it is intended that these constitute a 'crime punishable by imprisonment for a term exceeding one year' unless and until the court enters a decision to treat the offense as a misdemeanor.

S. 1030 would also exclude from such convictions any for which the person has received a pardon, civil rights restoration, or expungement of the record. Existing law incorporates a similar provision as to pardons in 18 U.S.C. section 1202, relating to possession of firearms, but through oversight does not include such provision in 18 U.S.C. section 922, dealing with their purchase or receipt. This oversight has resulted in a ruling that a state pardon does not permit a pardoned citizen to receive or purchase a firearm, despite the express provision that he may possess it. *Thrall v. Wolfe,* 503 F.2d 318 [313] (7th Cir.1974). This

change would remove that anomaly. In the event that the official granting the pardon, restoration of rights or expungement of record does not desire it to restore the right to firearm ownership, this provision is rendered inapplicable where the order or pardon expressly provides that the person may not possess firearms.

*Id.* at 18. This explanation reinforces our conclusion that a primary concern of Congress was that "convicted felon" status be determined with reference to state law.

The last sentence of the quoted language from the Judiciary Committee report suggests that legislators had in mind the simple example where an ex-convict is handed a pardon or expunction order by a state official. It would frustrate the intent of Congress, however, to focus solely upon the document transferred to the convict upon release. The intent of Congress was to give effect to state reforms with respect to the status of an ex-convict. A narrow interpretation requiring that we look only to the document, if any, evidencing a restoration of rights, would frustrate the intent of Congress that we look to the whole of state law, including state law concerning a convicted felon's firearms privileges. The last sentence from the above quote from page 12 of Senate Report 97–476 suggests that Congress did not intend that a "convicted felon" be restored to federal firearms privileges if the restoration was "based upon considerations not relating to fitness to own a firearm." *See id.* at 12.

Senator Durenberger, recognizing, after the passage of FOPA but before its effective date, that federal firearms disabilities depended upon state law, urged delaying the effective date of FOPA in order to allow states to reexamine their civil rights restoration laws and state statutes regulating possession of firearms by convicted felons. 132 Cong.Rec. S14,974 (daily ed. October 3, 1986). He stated that

[i]n the State of Minnesota, a convicted felon's civil rights are automatically restored when his sentence expires. Therefore, under the new federal law, it will no longer be a violation of the Federal Gun Control Act of 1968 for a Minnesotan convicted of a felony to possess a

firearm after his sentence has expired. The same will be true in each State which automatically restores a convicted felon's civil rights. This creates a problem in my State. The ironic, unintended side effect of this 'glitch in the gun law' is to turn a law intended to crack down on crime into a law that could abet crime unless Minnesota changes its law regarding civil rights of felons.... I believe it is appropriate for all of the States to review, and possibly revise, their laws governing possession of firearms, especially those State statutes regulating possession of firearms by convicted felons.

*Id.* Senator Durenberger's statement accurately portrays the effect of FOPA's deference to state law with respect to the federal firearms privileges of persons convicted in that state.

■ Hence, if a "convicted felon" has his civil rights restored by operation of state law, with or without a certificate or order documenting the event, we must look to the whole of state law of the state of conviction to determine whether the "convicted felon" is entitled to vote, hold public office and serve on a jury and also whether the "convicted felon" is entitled to exercise the privileges of shipping, transporting, possessing or receiving a firearm.[11]

### B.

The language of the statute points out the category of "rights" that Congress in-

tended to reach in the definition of "crime punishable by imprisonment for a term exceeding one year." The fact that Congress used the term "civil rights," as opposed to "all rights and privileges," as the government would have us interpret the statute, indicates that Congress intended to encompass those rights accorded to an individual by virtue of his citizenship in a particular state. These rights include the right to vote, the right to seek and hold public office and the right to serve on a jury.[12]

■ Our review of the legislative history has not produced a precise statement from Congress identifying the rights that must be restored by a state in order for it to have effected a "restoration of civil rights" for purposes of § 921(a)(20). We are confident, however, based on the general intent of Congress to redirect enforcement efforts against firearms owners that have a demonstrated potential for serious unlawful activity, that Congress envisioned a restoration of more than a *de minimis* quantity of civil rights.[13] We do not read into the statutory language, however, a requirement that there be a "full" restoration of rights. If Congress had intended a requirement of a complete restoration of all rights and privileges forfeited upon conviction, it could easily have so stated.

### IV.

■ Applying our construction of the statute to Defendant Cassidy, we find that

---

11. Senator Hatch, explaining S. 49, the successor to S. 1030, summarized the bill's impact concerning the effect of a pardon on a convict's firearms privileges as follows:

The Gun Control Act of 1968 currently bars any person who has been convicted of a felony from possessing a firearm. Federal courts have interpreted this to bar persons from possessing firearms who have had their criminal records expunged, who have been pardoned, or who have had their full civil rights restored pursuant to State law. S. 49 grants authority to the jurisdiction (State) which prosecuted the individual to determine eligibility for firearm possession after a felony conviction or plea of guilty to a felony. This will accommodate State reforms enacted since 1968 which permit dismissal of charges after a plea and successful completion of a probationary period. Since the Federal prohibition is triggered by the States' conviction, the States' law as to

what disqualifies an individual from firearms use should govern.
99th Cong., 1st Sess., 131 Cong.Rec. S8,689 (daily ed. June 24, 1985).

12. The government also urges that a convicted felon cannot have a restoration of rights without a restoration of his state firearms "rights." We note, however, that there is no individual right to possess a firearm. *See United States v. Warin,* 530 F.2d 103, 106 (6th Cir.1976), *cert. denied,* 426 U.S. 948, 96 S.Ct. 3168, 49 L.Ed.2d 1185 (1976).

13. There is no rational basis, particularly in light of the legislative history, for distinguishing between civil rights possessed by a felon after his release that were not expressly taken away, and those civil rights which were negated, by statute or otherwise, upon conviction or incarceration and then reinstated after his release.

Cassidy did have a "restoration of civil rights" as contemplated by 18 U.S.C. § 921(a)(20) because, after his release from prison, the rights to vote,[14] to serve on a jury and to seek and hold public office were restored to him. We also find, however, that because he was expressly restricted under state law from possessing a firearm,[15] he has been convicted of a "crime punishable by imprisonment for a term exceeding one year" for purposes of 18 U.S.C. § 921(a)(20). Accordingly, the judgment of the district court with respect to the dismissal of all three counts of the indictment is REVERSED, and the case is REMANDED for further proceedings not inconsistent with this opinion.[16]

14. The right to vote was restored automatically by operation of state law upon his release. *See* Ohio Rev.Code § 2961.01.

15. Ohio Rev.Code § 2923.13 provides that "(A) [u]nless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordinance, if ... (3) [s]uch person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse...." Cassidy has not been relieved from state disabilities pursuant to § 2923.14 which provides that a person disabled under § 2923.13 may apply for relief to the court of common pleas in the county where he resides. Ohio Rev.Code § 2923.14.

In order to assist firearms owners and dealers in complying with firearms laws, the BATF has published a compilation of state firearms laws. *See* Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms, *State Laws and Published Ordinances–Firearms* (18th ed. 1988).

16. Because Cassidy is a "convicted felon," both before and after the effective date of FOPA, we need not reach the issue of whether the FOPA definition of "convicted felon" applies to prosecutions under repealed 18 U.S.C.App. § 1202(a)(1).