**UNITED STATES of America, Plaintiff,**

v.

**Vernon K. COFFMAN, Defendant.**

**Crim. A. Nos. 85–10045–01, 90–3078–T.**

United States District Court,
D. Kansas.

April 5, 1991.

See also 905 F.2d 330.

Stephen M. Joseph, of Joseph, Robison & Anderson, P.A., Wichita, Kan., for defendant.

Emily B. Metzger (Benjamin L. Burgess, Jr., U.S. Atty., with her on the brief), Asst. U.S. Atty., Wichita, Kan., for plaintiff.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the defendant's motion to vacate sentence pursuant to 28 U.S.C. § 2255. The defendant has filed a motion for summary judgment which has been fully briefed by the parties. The court held oral argument on March 14, 1991 and is now prepared to rule. The only issue presented by the motion is whether Coffman was a convicted felon within the meaning of the amended firearm statute, 18 U.S.C. § 922, at the time he pleaded guilty and was sentenced. Since it has not addressed the issue, the government has apparently conceded that the amended statute applies to Coffman. *See Bradley v. School Board of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) (court is to apply the law in effect at the time it renders its decision unless retrospective application would result in manifest injustice to one of the parties or there is clear congressional intent to the contrary); *but see Bowen v. Georgetown University Hospital,* 488 U.S. 204, 207, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) (retroactivity is not favored; congressional enactments will not have retroactive effect unless their language requires it).

Coffman pleaded guilty to two counts of receipt of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(h)(1) (now 18 U.S.C. § 922(g)). Coffman seeks to have both convictions set aside and the sentences vacated on the grounds that he was denied due process of law and effective assistance of counsel.

The uncontroverted facts are as follows.

1. On December 1, 1974, Coffman was convicted in the District Court of Kiowa County, Kansas, of a felony and sentenced to imprisonment for not less than one year nor more than 20 years. On March 5, 1975, Coffman was placed on probation for five years. Coffman was discharged on or about March 5, 1980.

2. On December 9, 1974, Coffman was convicted in the District Court of Grant County, Kansas, of a felony and sentenced to imprisonment for not less than one year

nor more than 20 years. Coffman was granted probation by the court. On or about February 14, 1977, Coffman was discharged.

3. On February 8, 1977, Coffman was convicted in the District Court of Kiowa County, Kansas, of a felony and sentenced to imprisonment for not less than nine years nor more than 30 years. On December 30, 1981, Coffman was paroled by the Kansas Adult Authority. Coffman successfully completed his parole and was discharged from parole on December 30, 1983, by the Kansas Adult Authority.

4. At the time Coffman was discharged from parole, the Kansas Adult Authority delivered a written certificate of discharge to Coffman. The certificate stated:

### Certificate of Discharge

The Kansas Adult Authority, pursuant to Section 22–3722 of the Kansas Statutes Annotated, does hereby grant to COFFMAN, VERNON KCIL # 6791 a full and complete discharge from sentence and from parole effective December 30, 1983.

It is further ordered that all civil rights lost by operation of law upon commitment are hereby restored. These rights include, but are not limited to, the right to vote, the right to hold public office, and the right to serve on a jury.

It is this certificate that forms the basis for Coffman's challenge to his conviction.

5. On July 16, 1985, Coffman was indicted in the United States District Court for the District of Kansas for four federal offenses. Counts I and III alleged that on December 10, 1984, Coffman, a person who had been convicted in the courts of the State of Kansas of crimes punishable by terms exceeding one year, violated 18 U.S.C. § 922(h)(1) by receiving a revolver and rifle that had been shipped in interstate commerce. Counts II and IV alleged that on December 10, 1984, Coffman violated 18 U.S.C. § 922(a)(6) by making a false statement in connection with the acquisition of the two firearms described in Counts I and III.

6. On September 11, 1985, Coffman was arraigned before United States Magistrate John B. Wooley. He entered pleas of not guilty to all four counts and was subsequently released on bond.

7. On May 16, 1986, Congress enacted the Firearms Owners' Protection Act, Pub.L. 99–308, 100 Stat. 449 (1986), which changed the statutory definition of a "conviction" for purposes of the federal firearms statute. The amended section provides:

(a) As used in this chapter—

(20) The term "crime punishable by imprisonment for a term exceeding one year" does not include—

(A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or

(B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20). This amendment was effective on November 15, 1986. 18 U.S.C. § 921 note.

8. On September 22, 1986, Coffman appeared before this court and changed his plea on the firearms charges (Counts I and III) from not guilty to guilty. Pursuant to a plea agreement with the government, the false statement charges (Counts II and IV) were dismissed. The court accepted Coffman's change of plea.

9. On November 20, 1986, five days after the effective date of the amendment to 18 U.S.C. § 921(a)(20), Coffman appeared before the court. A finding of guilty was made by the court and the court sentenced Coffman to imprisonment for two consecu-

tive terms of five years each on the firearms charges. The Judgment of Conviction was signed by the court on November 26 and entered on December 1, 1986.

10. Coffman's counsel did not move for dismissal of the indictment on or before November 20, 1986.

*Discussion*

■ The issue before the court is whether under Kansas law Coffman's civil rights were restored, as contemplated by section 921(a)(20), such that his state felony conviction would not subject him to federal criminal sanctions for receiving a firearm. Coffman contends that the certificate of discharge did effect a restoration of civil rights within the meaning of this statute so that he was no longer disabled under federal law from receiving a firearm. The narrow issue before the court is the effect, if any, of the Kansas Adult Authority's failure to include an express prohibition against possessing firearms in the civil rights restoration certificate given to Coffman. Coffman argues that since the certificate of discharge did not include an express firearms restriction, he was not a convicted felon within the meaning of 18 U.S.C. § 921(a)(20).

The statute allegedly violated by Coffman provides:

> (h) It shall be unlawful for any person—
>     (1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
>     ...
> to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(h)(1) (now 18 U.S.C. § 922(g)(1)).

Prior to the amendment of the statute, the definition of who is "convicted" of "a crime punishable by imprisonment for a term exceeding one year" within the meaning of section 922(h)(1) was controlled by *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983). In *Dickerson*, the Court ruled that the determination of who is a convicted felon was a question of federal law and that a state's expunction of a conviction did

not automatically remove the firearms disability imposed by section 922(h)(1). The amended statute effectively overruled *Dickerson. See United States v. Pennon*, 816 F.2d 527, 529 (10th Cir.), *cert. denied*, 484 U.S. 987, 108 S.Ct. 506, 98 L.Ed.2d 504 (1987).

Kansas law imposes certain disabilities on persons who have been convicted of and imprisoned for a felony:

> (1) A person who has been convicted in any state or federal court of a crime punishable by death or by imprisonment for a term of one year or longer and is imprisoned pursuant to such conviction shall, by reason of such conviction and imprisonment, be ineligible to hold any public office under the laws of the state of Kansas, or to register as a voter or to vote in any election held under the laws of the state of Kansas or to serve as a juror in any civil or criminal case.
> (2) The disabilities imposed by this section shall attach when the convicted person is delivered to the custody of the secretary of corrections for imprisonment and shall continue until such person is finally discharged from parole or conditional release or is discharged from custody by reason of the expiration of the term of imprisonment to which the person was sentenced, except that when a sentence of imprisonment is modified by the court within 120 days from the date thereof and the convicted person is admitted to probation or assigned to a community correctional services program, such person shall not thereafter be subject to the disabilities imposed by this section.
> (3) The disabilities imposed upon a convicted person by this section shall be in addition to such other penalties as may be provided by law.

KSA 21-4615.

When the Kansas Adult Authority exercises its discretion to discharge a person from parole, that discharge has the effect of restoring to the person the civil rights lost by operation of law.

> The period served on parole or conditional release shall be deemed service of

the term of confinement, and, subject to the provisions contained in K.S.A.1981 Supp. 75–5217 relating to an inmate who is a fugitive from or has fled from justice, the total time served may not exceed the maximum term or sentence.

When an inmate on parole or conditional release has performed the obligations of his release for such time as shall satisfy the authority and that his final release is not incompatible with the best interest of society and the welfare of the individual, the authority may make a final order of discharge and issue a certificate of discharge to the inmate, but no such order of discharge shall be made in any case within a period of less than one year after the date of release except where the sentence expires earlier thereto. Such discharge, and the discharge of an inmate who has served his term of imprisonment, shall have the effect of restoring all civil rights lost by operation of law upon commitment, and the certification of discharge shall so state. Nothing herein contained shall be held to impair the power of the governor to grant a pardon or commutation of sentence in any case.

KSA 22–3722.

Kansas statute prohibits the possession of certain types of firearms by convicted felons:

(1) Unlawful possession of a firearm is:

.    .    .    .    .

(b) Possession of a firearm with a barrel less than twelve (12) inches long by a person who, within five (5) years preceding such violation has been convicted of a felony under the laws of Kansas or any other jurisdiction or has been released from imprisonment for a felony.

KSA 21–4204.

*Possession of the Rifle*

Coffman argues that since Kansas law does not prohibit the possession of a rifle by a convicted felon, the United States could not prosecute him for such an offense. The government has conceded this point. *See* Response of United States to Defendant's Motion for Summary Judgment, Doc. 68, at 7–8, 10. The conviction on Count III (receipt of the rifle) must be set aside and the five year sentence imposed by the court must be vacated.

*Possession of the Revolver*

Coffman argues that his first two felony convictions (both in 1974) for which he received probation did not involve the loss of any of his civil rights (*see* KSA 21–4615(1)), except for the statutory five year prohibition against possession of a firearm with a barrel less than 12 inches long. That prohibition would have expired prior to the events giving rise to the federal charges in this case.

The third felony conviction occurred on February 8, 1977. Coffman was sentence to imprisonment for not less than nine nor more than 30 years. Coffman was paroled December 30, 1981 and was discharged from parole on December 30, 1983. His civil rights were restored by operation of law as stated in the certificate he received. Coffman acknowledges that he remained under one legal disability. He could not possess a firearm with a barrel less than 12 inches long for a period of five years following his release from imprisonment. Coffman conceded that the State of Kansas could have prosecuted him for possession of the revolver. Coffman argues, however, that this 1977 conviction was not a "conviction" within the meaning of section 921(a)(20).

The government argues that since Coffman could not under Kansas law possess the revolver he purchased on December 10, 1984, the United States government could prosecute him for that offense. The government argues that if state law deems a person convicted, a federal court is not required to disregard the conviction just because the state has restored some civil rights. The restoration of some civil rights by operation of Kansas law did not restore to Coffman the right to possess the revolver.

Upon Coffman's discharge, "all civil rights lost by operation of law upon commitment" were restored to him. Those civil rights lost by operation of law and restored upon discharge were the rights to vote, hold public office and serve on a jury.

KSA 21–4615. The restoration of these civil rights did not restore to Coffman the privilege to possess certain firearms. The privilege of possessing a short-barreled firearm is restricted by a separate statute and that privilege is not automatically restored upon release from confinement or parole. KSA 21–4204(1)(b). That privilege is not restored until five years after release from imprisonment. *Id.*

The court will summarize the relevant case law. In *United States v. Kolter,* 849 F.2d 541 (11th Cir.1988), the Eleventh Circuit stated that under section 921(a)(20), Kolter would not be a convicted felon since his civil rights were restored without a firearms restriction. Kolter was convicted under 18 U.S.C.App. 1202(a) (the possession offense now included within section 922(g)). The issue before the court was whether the amended statute applied to Kolter, whose trial did not commence until November 19, 1986, four days after the effective date of the amended definition of convicted felon, but who committed the charged offense prior to the change in the law. The court held that the amended statute was applicable.

In *United States v. Presley,* 667 F.Supp. 678, 679 (W.D.Mo.1987), the court ruled that in section 921(a)(20) Congress "meant a general, substantially complete restoration of civil rights rather than absolutely total restoration of such rights." The court held that the former felon did not have his civil rights substantially restored when he was disqualified from serving as a juror or holding the positions of sheriff or State Highway Patrol officer. Because his civil rights had not been substantially restored, he could be prosecuted for the possession of a firearm by a person who had been convicted of a felony. The Eighth Circuit affirmed on the basis of the District Court's opinion. *United States v. Presley,* 851 F.2d 1052 (8th Cir.1988).

In *United States v. Erwin,* 723 F.Supp. 1285 (C.D.Ill.1989), the district court found section 921(a)(20) to contain at least three ambiguities: (1) whether it requires the restoration of civil rights to be accomplished by some affirmative act; (2) what is an "express provision" that the person may not ship, transport, possess, or receive firearms; and (3) what is the meaning of "civil rights." *Id.* at 1289. After examining the history of section 921(a)(20), the district court ruled that: (1) section 921(a)(20) does not require that the restoration of civil rights be accomplished by some affirmative act by the State (*id.* at 1295–96); (2) an Illinois firearm statute making it illegal for a felon to possess a firearm was not an "express exception" to the restoration of civil rights granted by another Illinois statute which is silent on firearm rights (*id.* at 1296–97); and (3) the meaning of civil rights must be determined according to federal law. Whatever else it means, civil rights means the right to possess firearms. *Id.* at 1297. "Restoration of civil rights" contemplates whatever amount of restoration a state may grant, as long as it includes the restoration of the right to possess a firearm. *Id.* at 1298. Since under Illinois law, the defendant could not possess a firearm notwithstanding the restoration of civil rights by statute, his "civil rights" were not restored within the meaning of section 921(a)(20) and he could be prosecuted for possession of a firearm. *Id.* at 1300.

On appeal, the Seventh Circuit affirmed. *United States v. Erwin,* 902 F.2d 510 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 161, 112 L.Ed.2d 127 (1990). The question before the court was whether the last sentence of section 921(a)(20) meant that a person to whom the state has restored any civil rights is no longer deemed convicted even though the law of that state considers him to be a convicted felon. *Id.* at 521. Contrary to the decision of the district court, the Seventh Circuit held that the separate firearm statute was an "express provision" that the defendant could not possess a firearm: "[T]he language is no less 'express' when codified elsewhere." *Id.* at 513. The Seventh Circuit set forth the following discussion, much of which is dicta:

> When state law deems a person convicted, that is dispositive for federal purposes under the first sentence of § 921(a)(20). *United States v. Cassidy,* 899 F.2d 543 (6th Cir.1990). The second sentence does not require a federal court

to disregard the state's definition of a conviction just because the state has restored any one civil right. The notice rule is designed not for statutes such as ¶ 1005-5-5 that return the right to vote and cut hair but for communications that seem to have broader import. If, for example, the governor issues a pardon that by virtue of state law does not restore the right to carry guns, then unless the state tells the felon this the federal government will not treat him as convicted. The second sentence of § 921(a)(20) is an anti-mousetrapping rule. If the state sends the felon a piece of paper implying that he is no longer 'convicted' and that *all* civil rights have been restored, a reservation in a corner of the state's penal code can not be the basis of a federal prosecution. A state must tell the felon point blank that weapons are not kosher. The final sentence of § 921(a)(20) can not logically mean that the state may dole out an apparently-unconditional restoration of rights yet be silent so long as any musty statute withholds the right to carry guns. Then the state never would need to say a peep about guns; the statute would self-destruct. It must mean, therefore, that the state sometimes must tell the felon that under state law he is not entitled to carry guns, else § 922(g) does not apply. To the extent *Cassidy* suggests otherwise, at 545 n. 5, we have doubts, although the question need not be resolved today. When, however, the state sends no document granting pardon or restoring rights, there is no potential for deception, and the question becomes whether the particular civil right to carry guns has been restored by law. *United States v. Kolter*, 849 F.2d 541 (11th Cir.1988), on which Erwin relies, dealt with a pardon that restored all civil rights, including an entitlement to possess weapons. Illinois does not allow Erwin to possess guns, and that is that.

*Id.* at 512–13 (emphasis in original).

In *United States v. Cassidy*, 899 F.2d 543 (6th Cir.1990), the Sixth Circuit thoroughly discussed the issues. Following a felony conviction and service of his prison sentence, Cassidy received a Restoration to Civil Rights certificate from the Ohio Adult Parole Authority, which restored to him the rights and privileges forfeited by his conviction, "namely the right to serve on juries and to hold office of honor, trust, or profit." *Id.* at 544. The Sixth Circuit specifically rejected the district court's requirement "that the express restriction on firearms privileges must be contained in the same statutory provision, or in the certificate, which restores civil rights." *Id.* at 545 n. 5. The Court held that:

> Congress intended that courts refer to state law to determine whether an individual should be subject to federal firearms disabilities by virtue of a criminal conviction. If state law has restored civil rights to a felon, without expressly limiting the felon's firearms privileges, that felon is not subject to federal firearms disabilities.

*Id.* at 546.

The Sixth Circuit stated that two matters were not clear from the face of the statute: (1) which civil rights must be restored to constitute a "restoration of civil rights"; and (2) whether the court should look only to the document, if any, tendered to a felon upon his release to determine whether his civil rights have been restored and whether there is an express limitation upon his firearms privileges. *Id.* at 546. The court held that

> if a "convicted felon" has his civil rights restored by operation of state law, with or without a certificate or order documenting the event, we must look to the whole of state law of the state of the conviction to determine whether the "convicted felon" is entitled to vote, hold public office and serve on a jury and also whether the "convicted felon" is entitled to exercise the privileges of shipping, transporting, possessing or receiving a firearm.

*Id.* at 549.

The court further held that Congress envisioned a restoration of more than a de minimis quantity of civil rights. The complete restoration of civil rights is not required, since Congress did not so specify. *Id.* The court held that Cassidy did have a

"restoration of civil rights" as contemplated by section 921(a)(20) because the rights to vote, serve on a jury and seek and hold public office were restored to him. The court also held that, because he was expressly restricted under state law from possessing a firearm, he has been convicted of a "crime punishable by imprisonment for a term exceeding one year" for purposes of section 921(a)(20). *Id.* at 550.

Coffman does not cite any cases directly on point, but relies on the above-quoted dicta from *United States v. Erwin*, 902 F.2d 510 (7th Cir.1990) that the state must inform him in the certificate that he is not entitled to possess firearms. The Sixth Circuit has expressly rejected the argument that the discharge certificate must contain the restrictions on firearms privileges. *United States v. Cassidy*, 899 F.2d 543, 545 n. 5 (6th Cir.1990). In the absence of Tenth Circuit precedent, this court adopts the position taken by the Sixth Circuit in *United States v. Cassidy*.

■ The last sentence of section 921(a)(20) provides, "Any conviction ... for which a person ... has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such ... restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." If the document sent to Coffman constitutes "such restoration of civil rights," since it fails to include any express prohibition on the receipt of firearms, Coffman would not be a convicted felon for purposes of this statute. "Such restoration of civil rights" could also mean that which occurs by operation of law instead of that contained within the certificate. Kansas law contains an express prohibition on the possession of certain types of firearms by a convicted felon. Under this interpretation, Coffman would be a convicted felon for purposes of the federal firearms statute. Since the intent of Congress was to make possession of a firearm a federal offense for those persons whom state law prohibited from possessing firearms, the court believes the second interpretation to be correct. Since it is appropriate to look to state law to determine whether a person is a convicted felon, it is also appropriate to

look to state law to determine whether the disabilities corresponding to a felony conviction have been removed.

Coffman had his civil rights restored by operation of law, with a certificate documenting the event. The court must, however, look to all of Kansas law to determine whether Coffman was entitled to vote, hold public office and serve on a jury and also whether he was entitled to exercise the privilege of possessing a firearm. At the time Coffman was discharged from parole, the civil rights denied him by operation of law upon his commitment to the secretary of corrections for imprisonment (the right to hold public office, the right to vote, and the right to serve as a juror, *see* KSA 21–4615(1)) were restored to him. KSA 21–4615(2). Pursuant to KSA 22–3722, the Kansas Adult Authority issued a certificate of discharge to him. This certificate contained no written provision that expressly stated that Coffman could not ship, transport, possess or receive firearms. KSA 21–4615, which restored Coffman's civil rights, did not restore to him the right to possess a revolver. That section does provide that "The disabilities imposed upon a convicted person by this section shall be in addition to such other penalties as may be provided by law." KSA 21–4615(3). Pursuant to KSA 21–4204(1)(b), Coffman was expressly prohibited from possessing a revolver for five years following his release from imprisonment. Because Coffman was expressly restricted under state law from possessing a firearm, he has been convicted of a "crime punishable by imprisonment for a term exceeding one year" for the purposes of section 921(a)(20). *See Cassidy*, 899 F.2d at 550.

The court agrees with the statement made by defense counsel at the hearing that Coffman is probably not the only person potentially impacted by this amendment to the firearms statute. The court believes that it would be better if the Kansas Parole Board added a provision to its Certificate of Discharge stating that Kansas law bars a person from owning a firearm with a barrel less than twelve inches long for five years following release from imprisonment for a felony conviction. The

court does not believe that the omission of this firearms restriction is fatal to Coffman's prosecution for receipt of the revolver, since Kansas law expressly prohibited him from possessing such a firearm.

*Ineffective Assistance of Counsel*

■ Although not argued in his motion for summary judgment, Coffman alleges in his motion to vacate that he was denied effective assistance of counsel because of his attorney's failure to know of the changes in the law under which Coffman was charged. The standards governing a claim of ineffective assistance of counsel are as follows:

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth the two elements that must be established to show whether counsel's assistance was so defective as to require the reversal of a conviction. First, it must be shown that counsel committed serious errors so as to not be functioning as the "counsel" provided by the Sixth Amendment. *Id.* at 687, 104 S.Ct. at 2064. To determine whether counsel's performance comported with the Sixth Amendment, the inquiry is whether the attorney's conduct is reasonable in light of all the circumstances of the case. *Id.* This is an objective standard based on whether the reasonable defense attorney would act in the same manner as the defense counsel in the situation being analyzed. *Id.* at 688, 104 S.Ct. at 2065.

Second, it must be shown that counsel's performance was prejudicial to the defense. *Id.* at 687, 104 S.Ct. at 2064. "[T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

*United States v. Rantz*, 862 F.2d 808, 810–11 (10th Cir.1988), *cert. denied*, 489 U.S. 1089, 109 S.Ct. 1554, 103 L.Ed.2d 857 (1989). For Count I (possession of the revolver), the defendant cannot meet either element of this test. Former counsel did not err by failing to move to dismiss the indictment against Coffman. Coffman has suffered no prejudice from counsel's failure to do so.

IT IS BY THE COURT THEREFORE ORDERED that Coffman's motion to vacate is hereby granted as to his conviction and sentence on Count III.

IT IS FURTHER ORDERED that Coffman's motion to vacate is hereby denied as to his conviction and sentence on Count I.