**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Walter Clinton HALL, Defendant–Appellant.**

**No. 93–1097.**

United States Court of Appeals, Tenth Circuit.

March 22, 1994.

Dennis W. Hartley, Colorado Springs, CO, for appellant.

---

John M. Hutchins, Asst. U.S. Atty. (James R. Allison, Interim U.S. Atty., and Charlotte J. Mapes, Asst. U.S. Atty., with him on the briefs), Denver, CO, for appellee.

Before SEYMOUR, Chief Judge, LOGAN and ANDERSON, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Walter Clinton Hall entered a conditional guilty plea to a charge of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He appeals his conviction and sentence of forty-six months imprisonment. With respect to his conviction, Hall contends that § 922(g)(1) does not apply to him because under Colorado law his civil rights had been restored and thus he had no prior crimes as defined by 18 U.S.C. § 921(a)(20). He also challenges the search of his residence and the warrant issued for the search as constitutionally defective. As to his sentence, Hall contests the computation of his criminal history under the United States Sentencing Guidelines. We hold that Hall was wrongfully charged under § 922(g)(1) because his civil rights had been restored by operation of Colorado law, and because Colorado did not prohibit him from possessing firearms at the time of his arrest. *See* § 921(a)(20). Accordingly, we do not reach his other contentions.

## BACKGROUND

On February 1, 1992, several officers and detectives of the Colorado Springs Police Department executed a search warrant at the residence of Walter and Diane Hall. Although police had been investigating the Halls for several weeks with the assistance of confidential informants, "unusual circumstances" prompted the police to hurriedly prepare the warrant and obtain its approval in the late-evening hours of January 31, 1992.[1]

The officers seized numerous items from the Halls' residence, including three handguns found in a locked cabinet in his basement. Mr. Hall was thereafter charged by indictment with violating 18 U.S.C. § 922(g)(1), which prohibits a person who has been convicted of a crime punishable by imprisonment for more than one year from possessing a firearm.

As of February 1, 1992, the date of his arrest, Hall previously had been convicted of four crimes punishable by more than one year in prison. All four were state crimes in Colorado, the earliest for second-degree burglary in 1976 and the most recent for attempted criminal mischief in 1991. The government does not dispute, however, that as of his arrest in the present case Hall had fully served his sentences for each of his prior felonies, and more than ten years had passed since he completed the sentence for his burglary conviction.

Hall filed a motion to dismiss the indictment contending that under 18 U.S.C. § 921(a)(20) his prior convictions could not be used to support a § 922(g)(1) charge because his civil rights had been automatically restored under Colorado law by the time of his arrest, and because state law permitted him to possess handguns. The district court disagreed with Hall on his claim that his civil rights had been restored. R. Vol. VII at 29–30. Noting a split in the circuits, the district court sided with the First Circuit in holding that a convicted felon's civil rights can be "restored" under § 921(a)(20) only through an affirmative act by the state, specific to the felon, and not by mere operation of law. *See United States v. Ramos*, 961 F.2d 1003, 1008

---

**1.** Detective Crouch explained the "unusual circumstances" as follows:

> One of our ... undercover vehicle[s], happened to be stolen by its original owner [whom] we had seized it from. [In] that vehicle were the case files regarding Mr. and Mrs. Hall's investigation. Therefore, we had to assume that our investigation was going to be compromised or had already been compromised.

R. Vol. IV at 162.

According to Detective Garcia, the undercover police vehicle was seized back by its original owner between 5:00 and 6:30 p.m. on January 31. *Id.* at 190. Garcia then prepared a thirty-eight page affidavit in support of the search warrant, gave it to several officers for review, and delivered the final copy to a state district court judge, who signed the search warrant at approximately 11:30 p.m. that evening. *Id.* at 191.

(1st Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 364, 121 L.Ed.2d 277 (1992). *But see United States v. Thomas,* 991 F.2d 206, 212 (5th Cir.) (holding that state can restore civil rights either affirmatively or automatically, individually or generally), *cert. denied,* —— U.S. ——, 114 S.Ct. 607, 126 L.Ed.2d 572 (1993); *United States v. Dahms,* 938 F.2d 131, 133 (9th Cir.1991) (same); *United States v. Essick,* 935 F.2d 28, 29–30 (4th Cir.1991) (same); *United States v. Erwin,* 902 F.2d 510, 512–13 (7th Cir.) (same), *cert. denied,* 498 U.S. 859, 111 S.Ct. 161, 112 L.Ed.2d 127 (1990); *United States v. Cassidy,* 899 F.2d 543, 549 (6th Cir.1990) (same).

Because Colorado law reinstates felons' civil rights automatically on release from confinement, rather than through an affirmative procedure, the district court held that Hall's civil rights had not been "restored" under § 921(a)(20). Thus, the court counted Hall's Colorado convictions as predicate felonies under § 922(g)(1).

## DISCUSSION

Section 921(a)(20) describes the prior crimes that will support a § 922(g)(1) charge as follows:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or *has had civil rights restored* shall not be considered a conviction for purposes of this chapter, *unless* such pardon, expungement, or *restoration of civil rights* expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20) (emphasis added).

■■■■ Hall contends that his four prior Colorado convictions should be disregarded pursuant to § 921(a)(20) because under Colorado law his civil rights were automatically

"restored" when he completed his sentences, and state law did not prohibit him from possessing firearms. The district court, as indicated, held that under § 921(a)(20) "only some affirmative additional step," specific to the felon, would "restore" civil rights. We review the district court's interpretation of § 921(a)(20) de novo. *United States v. Burns,* 934 F.2d 1157, 1159 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1246, 117 L.Ed.2d 478 (1992).

Colorado, like many states, restores various civil rights such as the rights to vote, sit on a jury, and hold office to its convicted felons once they have completed their sentences. It does not, however, issue a specific document or declaration verifying this restoration of rights for each individual. *Cf. Cassidy,* 899 F.2d at 544 (considering Ohio procedure of issuing a "Restoration to Civil Rights" certificate). Instead, it happens automatically by operation of law. *See* Colo. Const. art. VII, § 10 (investing "without further action" the right to vote and "all the rights of citizenship" in a person who has "served out his full term of imprisonment"); Colo.Rev.Stat. § 18–1–105(3) (right to hold office); Colo.Rev.Stat. § 13–71–109(2)(d) (right to jury service restored with right to vote).[2]

The question here is whether this is a "restoration" for purposes of § 921(a)(20). Following the First Circuit's reasoning in *Ramos,* the district court held this automatic restoration to be insufficient. Under this narrow reading of § 921(a)(20), "restored" is construed as similar in kind to "expunged" and "pardoned," thus requiring an affirmative act by the state, particular to the defendant, to "restore" his civil rights. *See Ramos,* 961 F.2d at 1008–1010 (reasoning that "[b]y the affirmative act of pardon, expungement or restoration, the state ... declare[s] its renewed trust in that person," and that

[2]  The government cites Colo.Rev.Stat. § 17–20–113 (providing that a convict who completes his sentence with good behavior "is entitled to a certificate" from prison officials and "on presenting it to the governor he shall be restored to citizenship") (repealed July 1, 1993), and implies that Hall's failure to produce a restoration certif- icate indicates that his rights had not been restored. This certificate, however, appears to have been merely a reward for good behavior, not a requirement for the restoration of civil rights. *Cf. People v. Turman,* 659 P.2d 1368, 1373 (Colo.1983) (en banc).

this necessarily requires an "individualized judgment").[3]

We do not read § 921(a)(20) this way. Looking first to the statutory language, the word "restored" certainly implies action of some kind by the state, but it does not suggest that the action must be individualized. Second, there is persuasive legislative history suggesting that automatic restoration is sufficient under the "civil rights restored" exception of § 921(a)(20). *See Cassidy*, 899 F.2d at 548–49 & n. 11 (quoting statements of Senators Durenberger and Hatch). Finally, the *Ramos* interpretation, though plausible, produces results so unusual that if Congress had intended them it likely would (and easily could) have been more explicit. *See Thomas*, 991 F.2d at 212 (noting that under *Ramos* a person who never lost his civil rights is convicted under § 922(g), while a person convicted of a more serious offense and stripped of his civil rights is immunized from § 922(g) so long as his rights were affirmatively "restored"); *Ramos*, 961 F.2d at 1011 (Torruella, J., dissenting).

■ Accordingly, we join the circuits that view automatic restoration of civil rights as effective under the § 921(a)(20) exception. We look to the whole of state law in evaluating the restoration of federal firearms privileges, *see Burns*, 934 F.2d at 1159, and "[i]f state law has restored civil rights to a felon, without expressly limiting the felon's firearms privileges, that felon is not subject to federal firearms disabilities," *Cassidy*, 899 F.2d at 546, at least not on the basis of a prior conviction in that state.

To determine whether Hall was lawfully charged with violating § 922(g)(1) we therefore must consider (1) whether Colorado had restored Hall's civil rights, and (2) whether Colorado law prohibited Hall from possessing a firearm at the time of his arrest. *See Thomas*, 991 F.2d at 211; *Dahms*, 938 F.2d at 133. As noted above, Colorado automatically invests the rights to vote, sit on a jury,

and hold office to persons provided that they are not incarcerated or on probation. Since it is undisputed that Hall had completed his sentences on all prior convictions as of February 1, 1992, the date of his arrest, we conclude that under Colorado law his civil rights had been restored.

His privilege to possess firearms also had been restored. Colorado law prohibits persons previously convicted of burglary, arson, or crimes involving force, violence, or deadly weapons from possessing firearms within ten years of their release from confinement. Colo.Rev.Stat. § 18–12–108. Hall was convicted of burglary in 1976, but the ten-year period had apparently passed since completion of his sentence. There being no other state firearms restrictions that would have applied to Hall at the time of his arrest, we conclude that Colorado law did not prohibit Hall from possessing firearms.

In sum, Hall did not have a predicate "crime punishable by imprisonment for a term exceeding one year," as defined by 18 U.S.C. § 921(a)(20), as his civil rights had been "restored" and his possession of firearms did not violate state law. Thus, his motion to dismiss the indictment charging him with violating 18 U.S.C. § 922(g)(1) should have been granted. Because we resolve Hall's appeal on this ground, we need not address his other contentions.

For the reasons expressed above, Mr. Hall's conviction is REVERSED. The mandate shall issue forthwith.

---

**3.** It is unclear whether a mandatory certification procedure—which does not actually reflect an "individualized judgment" by the state that "exceptional mitigating circumstances" exist in the felon's favor—would pass the First Circuit's affirmative "restoration" requirement. *See Ramos,*

961 F.2d at 1009; *cf. United States v. Glaser,* 14 F.3d 1213, 1218 (7th Cir.1994) (noting that many pardons, expungements, and restorations of civil rights by certificate occur without individualized consideration).