986 F.2d 1416
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Wayne Leon NIXON, Defendant-Appellant.
 No. 92-5063.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 30, 1992
Decided: March 3, 1993
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. W. Earl Britt, District Judge. (CR-91-26-7)
 Joseph Michael McGuinness, MCGUINNESS & PARLAGRECO, Salem, Massachusetts, for Appellant.
 Robert Daniel Potter, Jr., Assistant United States Attorney, Raleigh, North Carolina, for Appellee.
 Margaret Person Currin, United States Attorney, Raleigh, North Carolina, for Appellee.
 E.D.N.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, WILLIAMS, Circuit Judge, and DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Wayne Leon Nixon appeals his jury conviction and sentence for knowingly possessing, in and affecting commerce, firearms and ammunition, after having been convicted of a crime punishable by imprisonment for a term exceeding one year, 18 U.S.C. § 922(g)(1). Nixon bases his appeal on numerous grounds. He contends that the district court erred in refusing to dismiss the indictment. He next maintains that the district court erred in refusing to grant a motion for judgment of acquittal as a matter of law at the conclusion of all the evidence. He also disputes the legality of the initial investigatory stop. Further, Nixon asserts that the district court committed certain procedural errors during the trial. Finally, Nixon argues that the district court erroneously applied the Sentencing Guidelines.[1] Finding no error, we affirm.
 
 
 2
 * On March 28, 1989, in the Superior Court of Brunswick County, North Carolina, Wayne Leon Nixon was convicted of assault with a deadly weapon inflicting serious injury. For this conviction, Nixon received a sentence of imprisonment for six years. Following his conviction, Nixon was released on an appeal bond. The North Carolina Court of Appeals affirmed the conviction on June 25, 1990.
 
 
 3
 On May 25, 1990, Sergeant Billy Maultsby of the Wilmington, North Carolina, Police Department responded to a report that a black male wearing a black and red jogging suit had fired shots in the 400 block of Henry Street in Wilmington, North Carolina. Upon arriving in the 400 block of Henry Street, Sergeant Maultsby saw Nixon, a black male dressed in a black and red jogging suit, exiting the driver's side of a gold-colored Volkswagen. Sergeant Maultsby approached Nixon and asked for identification, which Nixon produced. Sergeant Maultsby then frisked Nixon, finding several .12 gauge shotgun shells in one of Nixon's pockets.
 
 
 4
 As Sergeant Maultsby conversed with Nixon, Nixon became excited and disorderly, using profanity against Sergeant Maultsby. During the encounter with Nixon, Sergeant Maultsby heard shots fired in the immediate area. A second police officer confronted another individual, who was carrying a revolver; Sergeant Maultsby left Nixon to assist the other officer. While engaged in disarming the other individual, Sergeant Maultsby heard the start of the Volkswagen engine. He observed the Volkswagen departing while Nixon remained standing on the street a short distance away.
 
 
 5
 Sergeant Maultsby radioed to another policeman, Officer Williams, to stop the Volkswagen. Officer Williams pursued the Volkswagen to a nearby street, where it stopped in a driveway. The driver exited the Volkswagen. Officer Williams approached the Volkswagen, observing two shotguns in the passenger area of the car. The driver of the Volkswagen fled when another individual diverted Officer Williams' attention. Officer Williams remained with the shotguns.
 
 
 6
 One of the guns is known as a "Mossberg Persuader," which is a shotgun barrel with a pistol grip. Because it has no stock, this particular gun is not fired from the shoulder. The second gun was another Mossberg shotgun with an assault-style stock, though it may be fired from the shoulder. The barrel of this gun is surrounded with a heat sink to dissipate the heat generated by a high firing rate. Both firearms were equipped with high-capacity magazines. Both were manufactured in North Haven, Connecticut.
 
 
 7
 Officer Williams retrieved the guns from the car, unloaded them, and turned them over to Sergeant Maultsby when he arrived a few moments later. Nixon arrived at about the same time. He requested the return of the shotguns taken from the Volkswagen, stating that the guns were his. Sergeant Maultsby informed Nixon that he would have to produce proof of ownership to claim the guns. Nixon became upset, insisting that he had a right to the weapons and that he wanted them returned. Thereafter, Nixon was arrested for disorderly conduct. Subsequently, an individual identifying himself as Nixon called the police station to inquire about recovery of the guns.
 
 
 8
 On July 12, 1990, Special Agent Jeff Key of the Bureau of Alcohol, Tobacco, and Firearms interviewed Nixon in the New Hanover County Jail. After Key informed Nixon of his Miranda rights, Nixon admitted possessing the shotguns involved in the incident on May 25, 1990; he claimed he used them for hunting.
 
 
 9
 A grand jury of the Eastern District of North Carolina indicted Nixon on June 25, 1991, on charges of possession of firearms while a convicted felon, in violation of 18 U.S.C. § 922(g)(1).[2] The court denied Nixon's motion to dismiss the indictment, and Nixon was tried on October 15, 1991.
 
 
 10
 During the trial, neither party objected during the voir dire, the opening statements, or the closing arguments. The parties agreed not to have the closing arguments reported. At trial, the court denied Nixon's motion for judgment of acquittal, which he made pursuant to Rule 29 of the Federal Rules of Criminal Procedure. After deliberation, the jury found Nixon guilty of violating 18 U.S.C. § 922(g)(1).
 
 
 11
 At a sentencing hearing on November 1, 1991, the court adopted the factual findings and the application of the Sentencing Guidelines contained in the presentence report. The report included a factual finding that one of the shotguns had been stolen; this finding supported a two-point enhancement to the offense level. The report also applied § 4A1.1(d), which provides for a two-point enhancement to the criminal history computation if the offense was committed while the defendant was under a criminal justice sentence. Adhering to the guideline range as calculated in the report, the court sentenced Nixon to a term of imprisonment of forty-six months.
 
 II
 
 12
 Nixon contends that the district court erred as a matter of law by refusing to dismiss the indictment, which charged him with violating 18 U.S.C. § 922(g). He argued at the district court hearing on his motion to dismiss the indictment that he had not been previously convicted, within the meaning of the statute.
 
 
 13
 The United States Code, Title 18, Section 922(g) provides:
 
 
 14
 It shall be unlawful for any person-
 
 
 15
 (1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;
 
 
 16
 ....
 
 
 17
 to ... possess in or affecting commerce, any firearm or ammunition....
 
 
 18
 18 U.S.C.S. § 922(g) (Law. Co-op. 1979 & Supp. 1992).
 
 
 19
 For the purposes of § 922(g), "firearm" is defined as:
 
 
 20
 (A) any weapon ... which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device.
 
 
 21
 18 U.S.C. § 921(a)(3).
 
 
 22
 Under 18 U.S.C.S. § 921(a)(20),
 
 
 23
 What constitutes a conviction of [a crime punishable by imprisonment for a term exceeding one year] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.
 
 
 24
 18 U.S.C.S. § 921(a)(20) (Law. Co-op. 1979 & Supp. 1992).
 
 
 25
 When prosecuting a violation of 18 U.S.C. § 922(g)(1), the government must establish the predicate conviction as an element of § 922(g)(1). United States v. Essick, 935 F.2d 28 (4th Cir. 1991). Under 18 U.S.C. § 921(a)(20), state law determines whether an individual is under a conviction or whether an individual's civil rights have been restored for the purposes of § 922. See United States v. Cassidy, 899 F.2d 543 (6th Cir. 1990); see also United States v. McLean, 904 F.2d 216 (4th Cir.) (adopting Cassidy), cert. denied, 111 S. Ct. 203 (1990).
 
 
 26
 Under Cassidy, "if state law has restored civil rights to a felon, without expressly limiting the felon's firearms privileges, that felon is not subject to federal firearms disabilities." Cassidy, 899 F.2d at 546; see also United States v. McBryde, 938 F.2d 533 (4th Cir. 1991) (holding that North Carolina's restoration of civil rights to defendant made his prior state conviction no longer a predicate conviction for purpose of 18 U.S.C. § 921(a)(20)). In North Carolina, a felon's rights are automatically restored upon:
 
 
 27
 (1) The unconditional discharge of an inmate by the State Department of Correction or the North Carolina Department of Correction, or a probationer by the State Department of Correction, or of a parolee by the Department of Correction; or of a defendant under a suspended sentence by the court.
 
 
 28
 (2) The unconditional pardon of the offender.
 
 
 29
 (3) The satisfaction by the offender of all conditions of a conditional pardon....
 
 
 30
 N.C. Gen. Stat. § 13-1 (1991) (entitled "Restoration of citizenship.")
 
 
 31
 In this case, Nixon's civil rights had not been restored by any of the means provided in § 13-1. Nixon contends, however, that the North Carolina Felony Firearms Act[3] acted as a partial restoration of his civil rights because that statute did not prohibit his possession of the weapons and, therefore, his possession of the firearms was not independently illegal. That contention is without merit.
 
 
 32
 Even while moving to dismiss the indictment, Nixon conceded that he had been convicted. Joint Appendix at 22-23. He also conceded that his conviction had not been "expunged" or"set aside" and that he had not been "pardoned." Joint Appendix at 23. He further conceded that he had not had his civil rights generally restored. Id.
 
 
 33
 Because Nixon's civil rights had not been restored, the North Carolina Felony Firearms Act is inapplicable in this case. North Carolina may restore a felon's rights by a pardon or by expunging or setting aside a conviction. Had North Carolina restored Nixon's rights, then he would not be under a conviction for purposes ofs 922(g). Absent such a restoration, however, North Carolina law does not determine which weapons a convicted felon may possess under federal law.
 
 
 34
 Thus, because Nixon was under a conviction that had not been expunged or set aside or for which his civil rights had not been restored, federal law prohibited his possession of the firearms.
 
 III
 
 35
 Nixon contends that the government failed to provide evidence sufficient to prove each element of the offense and that the court therefore erred by denying his motion for acquittal as a matter of law. First, Nixon argues that the government failed to establish the predicate conviction necessary to a violation of 18 U.S.C. § 922(g). Nixon next asserts that the government failed to prove that he possessed the firearms. Further, Nixon claims that the government did not prove that his possession of the firearms "affected commerce."
 
 
 36
 When reviewing the sufficiency of the evidence, we must inquire "whether 'any rational trier of fact could have found the essential elements of the crime [charged] beyond a reasonable doubt.' " United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). We must construe the evidence "in the light most favorable to the government, assuming its credibility, drawing all favorable inferences from it, and taking into account all the evidence, however adduced." Id.
 
 
 37
 The first element the government must prove unders 922(g) is that the defendant previously had been convicted. At the trial in this case, the parties stipulated that Nixon had been convicted. The parties' stipulation, which was read to the jury and received in evidence without objection, stated:
 
 
 38
 The government and the defendant have stipulated and agreed that on March 28, 1989, in the Superior Court of Brunswick County, North Carolina, the defendant was convicted of a crime punishable by imprisonment for a term exceeding one year within the meaning of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 921(a)(20).
 
 
 39
 Joint Appendix at 126.
 
 
 40
 Regarding this stipulation, the district court instructed the jury:
 
 
 41
 To satisfy the first element, you need only find the defendant was in fact convicted of a crime punishable by term of imprisonment for a term exceeding one year....
 
 
 42
 The parties have stipulated that the defendant was convicted of a felony on March 28, 1989 so this element of the offense has been established.
 
 
 43
 Joint Appendix at 169.
 
 
 44
 Nixon asserted no objection to the reading of the stipulation to the jury, to the admission into evidence of the stipulation, or to the court's instruction to the jury. Through the stipulation, the government established that Nixon had been convicted of a felony within five years of his current offense. See United States v. Essick, 935 F.2d at 31. Once Nixon entered into the stipulation in which he explicitly acknowledged that he had been previously convicted, within the meaning of both 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 921(a)(20), approximately one year and two months prior to his possession of the firearms, he thereby waived for appeal any argument that the government did not prove his prior conviction.
 
 
 45
 Nixon next asserts that the government failed to prove his possession of the firearms; he maintains that the government failed to demonstrate either actual or constructive possession of the weapons. To establish possession, the government must adduce"evidence showing ownership, dominion, or control" over either the guns or the vehicle. See United States v. Blue, 957 F.2d 106 (4th Cir. 1992).
 
 
 46
 At trial, the court received testimony that Nixon's pockets contained .12 gauge shotgun shells and that the weapons were .12 gauge. One of the police officers testified that he had observed Nixon exiting the vehicle in which the weapons were found. Upon seeing the weapons in the custody of a police officer, Nixon claimed them as his own and requested their return. Moreover, another police officer testified that an individual identifying himself as Nixon contacted the police department inquiring about the return of the weapons. Finally, a special agent of the Bureau of Alcohol, Tobacco, and Firearms testified that Nixon had admitted to him that he possessed the weapons on May 25, 1990, the relevant date in this case. Through this testimony, the jury reasonably could have inferred Nixon's possession of the weapons.
 
 
 47
 Finally, Nixon contends that the government failed to prove that his possession of the firearms "affected commerce." To establish that possession of firearms was "in or affecting commerce," the government need only prove that the weapons traveled in interstate commerce prior to possession by the defendant. Scarborough v. United States, 431 U.S. 563, 575-77 (1977). The government elicited testimony that the weapons were manufactured in Connecticut and that the offense in which they were involved occurred in Wilmington, North Carolina. This information supports an inference that the weapons had traveled in interstate commerce; thus, the government's evidence sufficiently established this element.
 
 
 48
 Based on the foregoing, which must be taken in the light most favorable to the government, Nixon's contention that the district court erred in denying the motion for acquittal as a matter of law must fail.
 
 IV
 
 49
 Nixon raises for the first time on appeal the legality of the initial stop during which police officers found the shotguns and the shells; he now argues that these items must be suppressed as the fruits of an illegal stop. Nixon filed no suppression motion regarding the evidence obtained during the events of May 25, 1991, nor did he raise an objection to the testimony of Sergeant Maultsby, who initially encountered Nixon on that date. Absent plain error, Nixon has waived his right to raise this issue on appeal.
 
 
 50
 To conduct an investigatory stop, a police officer need not have probable cause; rather, an officer need have only a reasonable, articulable suspicion. Terry v. Ohio, 392 U.S. 1, 22-24 (1968). A dispatcher's report may provide the basis for a reasonable, articulable suspicion that criminal activity has occurred. See United States v. Crittendon, 883 F.2d 326, 328-29 (4th Cir. 1989) (reasonable suspicion based on police report).
 
 
 51
 In this case, the officer conducting the stop had received a police radio call concerning an individual who matched Nixon's description.
 
 
 52
 In addition, a report of shots fired by an individual matching Nixon's description gave rise to the question of the officer's safety. Thus, the dispatcher's report gave the officer a reasonable, articulable suspicion that criminal activity had occurred.
 
 
 53
 By failing to raise this issue below, Nixon has waived it for appeal. Even had Nixon not waived this issue, however, the investigating officer had a sufficient basis for conducting the stop. Thus, we find no error in the admission of the evidence obtained during the events of May 25, 1991.
 
 V
 
 54
 In his brief, Nixon asserts certain procedural errors to which he failed to object at trial. Because he failed to raise his objections at trial, we review Nixon's arguments only for plain error. Fed. R. Crim. P. 52(b).
 
 
 55
 First, Nixon argues that the district court erred by admitting prejudicial, inflammatory expert testimony about the design of the Mossberg Persuader. He maintains that the expert's statement that the shotgun was for "shooting somebody" constituted unsubstantiated speculation and conjecture in violation of Rule 403 of the Federal Rules of Evidence.
 
 
 56
 Special Agent McAleer of the federal Bureau of Alcohol, Tobacco, and Firearms, who testified as an expert witness, stated his opinion as to the purpose of the Mossberg Persuader:
 
 
 57
 The shotgun is configured very similar to shotguns that I have used during my career in a law enforcement capacity. It is shortened so you can bring it to bear at very close quarters and very quickly for self-defense purposes, for shooting somebody. It's a firearm that is shortened so that you can take it into a confined space and wield it very quickly. Wherein if you had a longer weapon you would be bashing into walls and would be unable to bring it and point it where you needed it to go because it's too big.
 
 
 58
 Joint Appendix at 123.
 
 
 59
 When taken in context as a statement of opinion of a firearms expert as to the purpose and unusual design of a weapon, this testimony is not unduly prejudicial. Thus, no Rule 403 violation occurred, as the probative value was not substantially outweighed by the danger of unfair prejudice.
 
 
 60
 Nixon next asserts that the district court erred by failing to record the voir dire, the opening statements, and the closing arguments. He maintains that, because he has not had the opportunity to review the voir dire, the openings, or the closings, he has not been able to determine whether any issues are contained therein that might merit review for plain error.[4]
 
 
 61
 Contrary to Nixon's assertions, however, the voir dire and opening statements were recorded and reported by the court reporter. Moreover, with Nixon's agreement, the closing arguments were not reported, though they were recorded. Neither Nixon nor the government asserted any objection during the voir dire, the openings, or the closings. Further, Nixon has alleged no specific errors. Thus, we find that Nixon has asserted no procedural error upon which to base a reversal.
 
 VI
 
 62
 Finally, Nixon asserts that the district court erred in its application of the United States Sentencing Guidelines to his case. Although Nixon failed to raise the issue at the sentencing hearing, he now contends that the court erroneously applied § 2K2.1(b)(2) of the Sentencing Guidelines.[5] We review this contention only for plain error because of Nixon's failure to object at sentencing. See United States v. Fox, 889 F.2d 357, 359 (1st Cir. 1989) (defendant required to raise objection at district court sentencing hearing).
 
 
 63
 Nixon asserts that, in enhancing the offense level by two levels, the court erred because it had no proof that one of the shotguns was stolen. The court, however, specifically adopted the factual findings of the presentence report, which included a finding by the probation officer that one of the shotguns had, in fact, been stolen. For the purposes of sentencing, the adoption of this finding provides sufficient basis for the enhancement of the offense level unders 2K2.1(b)(2).
 
 
 64
 Nixon also argues, again for the first time on appeal, that the court erred by failing to decrease the offense level to level six pursuant to § 2K2.1(b)(1). Nixon maintains that he used the firearms for lawful sporting purposes. The trial testimony indicated: each of the shotguns seized on May 25, 1990, had high-capacity magazines not used for hunting; the Mossberg Persuader cannot be aimed with accuracy, its design suits usage in a confined space, and it is fired from the hand rather than from the shoulder; and Nixon possessed the weapons in a residential neighborhood where shots were fired on May 25, 1990. This evidence sufficiently rebuts Nixon's contention that he used the guns only for sport; therefore, the court correctly applied § 2K2.1(b).
 
 
 65
 Nixon also contends that the court erred by adding a two-point enhancement pursuant to § 4A1.1(d).[6] Nixon asserts that, because he was on an appeal bond at the time the offense was committed, he was not under a criminal justice sentence for the purposes of this section. Nixon's assertion lacks merit because, although he had been released on an appeal bond, he had been sentenced to a six-year term of imprisonment. The district court's application ofs 4A1.1(d) in those circumstances was not erroneous. See United States v. Lillard, 929 F.2d 500 (9th Cir. 1991) (if defendant commits another crime after being sentenced but before his sentence is served, sentencing enhancement for unserved sentence is applicable); cf. United States v. Martinez, 931 F.2d 851 (11th Cir.) (defendant, who had been sentenced but had not yet surrendered for service of his sentence, was "under a criminal justice sentence" within the meaning of the guidelines), cert. denied, 112 S. Ct. 268 (1991).
 
 
 66
 Based on the foregoing, we find that the district court committed no error in applying the Sentencing Guidelines to this case.
 
 VII
 
 67
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 In his brief, Nixon asserted several additional, procedural grounds for appeal; however, Nixon neither addressed these issues in his brief, nor did he raise them at trial or at oral argument on this appeal. These additional issues include: (1) admission into evidence of a statement made by Nixon; (2) admission into evidence of a box of shotgun shells; (3) the court's instruction to the jury regarding the box of shotgun shells; (4) lack of testimony regarding "interstate shipment of firearms"; and (5) violation of due process. We find no merit in these grounds
 
 
 [2]
 On June 17, 1990, officers of the Wilmington Police Department again had stopped Nixon. Again, Nixon was driving the gold-colored Volkswagen. Inside the car, the officers discovered a loaded .357 magnum revolver, a shotgun, and a small quantity of marijuana. For this incident, the grand jury charged Nixon with a second count of possession of a firearm while a convicted felon, in violation of 18 U.S.C. § 922(g)(1). After the court granted Nixon's motion to suppress the evidence involved in this second count, the government dismissed count two
 
 
 [3]
 The North Carolina Felony Firearms Act is codified in N.C. Gen. Stat. § 14-415.1, which reads:
 It shall be unlawful for any person who has been convicted of [a felony]to purchase, own, possess, or have in his custody, care, or control any handgun or other firearm with a barrel length of less than 18 inches or an overall length of less than 26 inches, or any weapon of mass death and destruction ... within five years from the date of such conviction, or the unconditional discharge from a correctional institution, or termination of a suspended sentence, probation, or parole upon such conviction, whichever is later....
 N.C. Gen. Stat. § 14-415.1 (1991).
 
 
 [4]
 Nixon had moved this Court to supplement the record on appeal by ordering the transcription and inclusion into the record of the opening statements, voir dire, and closing arguments. The Court denied the motion
 
 
 [5]
 Section 2K2.1(b) reads:
 (b)Specific Offense Characteristics
 (1)If the defendant obtained or possessed the firearm or ammunition solely for lawful sporting purposes or collection, decrease the offense level ... to level 6.
 (2)If the firearm was stolen ..., increase by 2 levels.
 
 
 [6]
 Section 4A1.1(d) provides for a two-point enhancement of the defendant's criminal history if the defendant committed the offense "while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(d). For purposes of § 4A1.1(d), sentences for all felony offenses are counted. U.S.S.G. § 4A1.2(c)